Matt Larson of the Federal Defender's Office for Mr. Monk, and I will endeavor to reserve about three minutes for rebuttal. Your Honors, Mr. Monk has made a showing of innocence adequate to excuse the late filing of his pro se habeas petition. Considering all the evidence here, one cannot have confidence in Mr. Monk's conviction. Well, let's get right to Mr. Rayford. You know what the evidence is from him. It's something reported five years supposedly after the fact. Rayford is a convicted felon. In my view, that's not even enough for probable cause for a search warrant or for arrest warrant or for anything. If a judge were presented with information from somebody like Rayford under those circumstances, hearsay five years later, I mean, I know of nobody in his right mind or her right mind who would issue a warrant on the basis of something like that. And yet you tell us that's enough to us to get over the high threshold for actual innocence. How is that? Respectfully, Your Honor, I don't think that's enough. In fact, in my reply brief, I agree that if all we had here was Mr. Rayford's affidavit, then this would be a different case. Yeah, Rayford is a zero in terms of enough information to get you past the actual innocence barrier. If that was it, Your Honor, I would probably agree with you. But that's not it. The law requires us to look at all the evidence. And here we have three people who have come forward since Mr. Monk was convicted who have corroborated not only Mr. Smith's confession but have added even more reason to doubt Mr. Monk's conviction. I need to ask you a question just for context on all of this because my old criminal mind from the old days goes that, obviously, Mr. Bell is dead now, correct? Correct. And how long after the offense did he die? He had passed away by the time of sentencing in 2006. Okay. So he didn't die within a year and a day. So no one could be charged with murder, right? I don't know. I actually have another case where someone was charged with murder. Well, I mean, generally the statute of limitations on murder, it doesn't exist. But in order to be charged with murder, if you don't die right away, in California you have to die within a certain period of time. So my understanding on that would be that no one can be prosecuted for murder on this. So if someone could be prosecuted on this case now, you know, that it would go by the statute of limitations of attempted murder, correct? Well, Your Honor, first I'm not aware of any evidence that the cause of death was attributable to the shooting. I don't know what the cause of death was. All we have in the record is that he had passed away. Well, what I'm saying is no one can be charged with murder if the statute's run on attempted murder. Then I'm trying to evaluate, you know, I would, well, if people come forward and say, hey, I did it, but nothing can be done, that kind of takes away from the credibility of someone saying they did it. Well, the person who did it, according to the defense in this case, Your Honor, is Mr. Smith. And he isn't saying he did it now. He said he did it before. That's correct. But Mr. Smith is going to spend the rest of his life in prison for the bevy of crimes that he's committed in other cases. So nothing more can happen to him. To Mr. Smith? Right. In terms of admitting or not admitting, that's right, Your Honor. We know that at the time of the shooting, Mr. Smith confessed. We know that he was going around the neighborhood bragging about it. But then he retracted it, right? Yes, when the police came in and said, we're going to prosecute, he said, oh, actually, I didn't do it after all. But he was bragging around the neighborhood, and Detective Dow admitted he talked to none of those people. He did not talk to Mr. Bell. Bragging, a person like this bragging around the neighborhood that we're talking about is enough to constitute any kind of reliable information or evidence? Your Honor, we're looking at all of the evidence here. And every time I look at either a single piece or all of the evidence, I don't see enough to get you anywhere. Let's start at the beginning then. All right. The evidence against Mr. Monk was generally weak. It's a one witness identification, which is uncorroborated. And Detective Dow admitted that. He found no evidence corroborating Mr. Bell's statement that the person who shot him. But he knows him. He knows the person he identified. He knows both Mr. Monk and Mr. Smith, who he said were in the group that approached him that day. Okay, but I guess the point there, if we're going to be accurately saying what the state of the evidence is, if, like, I identify my husband as my killer, you know, the likelihood of me misidentifying my husband isn't great. The likelihood of identifying someone that you know is maybe not your husband, but isn't as great as if this were a stranger identification. There's no doubt that he identified Mr. Monk as the shooter. What I'm highlighting is the fact that nothing corroborated that. There were no third party witnesses. There was no DNA, no video surveillance, no blood, no fingerprints, no murder weapon. Sounds like CSI, the CSI problem. It's a situation, Your Honor, where, and this Court has recognized when you have these one witness cases and you have a lack of corroboration, and then, as in this case, you have multiple witnesses coming forward after trial casting further doubt on the conviction and indicating that the person who confessed actually is the culprit. You have a serious problem, a serious question about whether the right person is spending the rest of his life in prison. But only if there's an addition of reliability with regard to any of that evidence. And here, Your Honor, there's been no evaluation of that. Mr. Monk asked for an evidentiary hearing twice in the district court, and it was denied. There's been no evaluation in this Court's opinion in Maggioi v. Roe. I wrote Maggioi. I know what you're talking about. Indeed, Your Honor. I sent it back for an evidentiary hearing. Indeed, Your Honor. And it never happened. I followed up to see what happened in that case. And the guy we were chasing around turned out to be in a crazy, in an insane asylum or something like that. So, anyway, that's beside the point. But, anyway, Your Honor is right. In that case, there had been no evaluation. There had been no evidentiary hearing, just as in here. But there was enough to convince the panel that there should have been. And here, I'm having trouble with all the little pieces. Nothing seems to fit. In Maggioi, the person who inculpated the defendant subsequently said, I was lying. That was false. Here we have evidence in which Mr. Bell goes to two of his friends, two fellow gang members from BIG, and he says, what I said on the stand against Mr. Monk, that was a lie. It wasn't Mr. Monk who shot me. It was Mr. Smith. I don't care who goes down. Among two of the fellow gang members being? Mr. Bell is of the BIG gang. The rival gang is the 2-1 gang. Mr. Monk and Mr. Smith are both of the 2-1 gang. So Mr. Bell says to his friends, I don't care who goes down. Who are his friends? Mr. Rayford and Mr. Marshall. And he says, I don't care who goes down. Rayford is a zero. And is Marshall in the record? Yes. Mr. Marshall is the affidavit that Mr. Monk proffered in the district court below, which the district court refused to consider. Why? He said, I'm considering this as an attempt to file a successive habeas petition, so I'm not going to consider it. So it's not in the record? It is in the record. But it's not formally in the record. It was rejected. And wrongly so, Your Honor. The district court said, I'm not going to consider this evidence because I consider it an additional habeas petition. That was error. Mr. Monk was not raising a new claim. The claim he had raised when the magistrate said, I'm going to dismiss your petition for being late, was, I should be excused for the late filing because I'm actually innocent. The magistrate said no, and judgment was entered. Subsequently, Mr. Monk got the declaration from Mr. Marshall, and he proffered it as additional evidence. And who's Mr. Marshall? That's what we're talking about. I know. Who is he? He's a fellow gang member of Mr. Marshall's. Another gang member. Indeed. But, if Your Honor is unsatisfied with the fact that they're gang members, we now have Monica Tucker. She's a school teacher. Now, tell us more about the gang member. What did he say? He said, more specifically, Right. The first person, Mr. Rayford, said, Mr. Bell confided to me that it wasn't Monk who was the shooter. Mr. Marshall went a step further. He said, it wasn't just that Mr. Monk was the shooter. He specifically identified Mr. Smith as the shooter. And Mr. Smith is the person who had confessed to this, who had been telling people in the neighborhood that he had been the shooter, and who the police never investigated. And what was the time differential between supposedly the admission and when Marshall came forward? Marshall came forward in 2011, Your Honor. And how long is that after the supposed conversation that's hearsay? After the conversation? Right. This would be some six years. So, you've got a six-year gap. Yes. So, one is a five-year gap, one is a six-year gap. And this would be an excellent question to run down in cross-examination at an evidentiary hearing. Why was there a delay? But there's been no evaluation of this. Our position is there's a delay because Mr. Monk is in prison, he's pro se, and the people who have come forward in his support, at least the first two, are rival gang members and have a natural reluctance to want to help him and to admit that their fellow gang member had fingered their own person. Wait a minute. The Rayford affidavit contradicts that because Rayford says they weren't rival gang members, which actually contradicts the position your client took in the California lower court. Mr. Rayford said there's no beef. Judge Bennett is right about that. Yes. Mr. Rayford said there's no beef. But all the other evidence, Mr. Dow, Mr. Bell, Mr. Smith, says there was beef. So, yes, that's another inconsistency that, again, could be flushed out through cross-examination. Well, but you still have to meet the, I love this word, the schlup standard. You have to schlup through there. We do. That's a high hurdle. It is a high hurdle, Your Honor. But the standard is that considering all the evidence, no reasonable juror would vote to convict beyond a reasonable doubt. Now, all the evidence here is that the only evidence supporting conviction is Mr. Bell's accusation on the stand. We have evidence from two people. They may be of questionable credibility, but we don't know because they haven't been examined. But we have two people who say Mr. Bell admitted to them, confided to them, as his friend and fellow gang member, that he had lied on the stand. So, but it had to be before, well, because Mr. Bell died in what? By 2006. By 2006. So it had to have the conversations as had to have happened back when he was alive, if they happened at all. Correct. Right. And Mr. Rayford said it was in the hospital. What explanation do we have in any of the declarations as to why it took so long for them to come forward? Why it took so long? As I just alluded to, there's no explanation in the declarations. Well, if there was an explanation, wouldn't that be nice to have right here? The one that I proffered to the court is that these are rivals. They're not in a hurry to help Mr. Bell. Well, yeah, but you're proffering that. I mean, we could proffer another one and say because they're lying. I mean, you have to go by, you know, what's the weight of the declaration? And that seems to me as a kernel that's really missing there. And I would say if there was corroboration of Mr. Bell's claim, there may be no weight to these declarations. But there isn't. There's no other person saying Mr. Monk is guilty. It's all Mr. Bell. And Detective Dow, who was assigned to investigate this case, when he's told that someone else has confessed to the killing and is telling people in the neighborhood that he did so, he interviews none of those people. He doesn't ask Mr. Bell anything about Mr. Smith. He basically takes Mr. Bell's word at it and ignores all the other evidence. And they proceed against Mr. Monk, who, by the way, is not a fugitive. Well, they did talk to Mr. – they did call Mr. Smith in. And then Mr. Smith said he wasn't such a big man. They said, okay, that's fine. You can go. You know, this was not, you know, a meaningful interrogation. So what has Smith said along the way? I was innocent. I did it. And then I'm – no, I didn't? No. What Mr. Smith said in his confession was that he was in this group that encountered Mr. Bell. And he either saw a gun or thought that Mr. Bell had a gun. And they had words, and so he fired. And when he was interviewed by Mr. – by Detective Dow, he said, oh, that's not true. I didn't mean it. Okay, you can go. Do you want to save any time for rebuttal? I would, Your Honor. But I would like to – It's your time. You can use it all if you want. No, I would like to reserve the three minutes, in fact. Okay. Thanks. Good morning. Good morning, Your Honors. Deputy Attorney General Herb Taddeff on behalf of the respondent. May it please the Court. I'd like to just bring up a threshold issue, if I may, which is the record on appeal. There have been several declarations that have been – Well, I kind of keep trickling in. I mean, there was one in front of the district court, right, that was considered. Then another one comes up on – when they're trying to reconsider. And then there's another one that comes up in front of us, right? Yes. If I may explain, Your Honor, the first declaration properly before the district court was Mr. Rayford's declaration. The second declaration was submitted with a Rule 60B motion more than a year after the judgment was entered in this case. The district court rejected that, finding that it was a successive petition. There has been no appeal from the order denying the Rule 60B motion. So the Marshall declaration is not properly part of the record on appeal and shouldn't be considered. The third declaration is the – I believe it's Ms. Trotter. I'm sorry, that's Your Honor. Monica. Is it Monica? Tucker. Excuse me. Monica Tucker, yes. And that one was just recently submitted while the appeal has been pending. And, of course, that was never before the district court and it would be highly improper for this court to consider that. Mr. Teraff, can I ask you this question? Mr. Larson keeps referring to the all the evidence standard. And as I understand that standard, and you tell me if I'm wrong, that refers to admissible evidence, not all the possible items out there that one could consider that aren't admissible. Absolutely. Admissible evidence that was before the fact finder. That was before the fact finder. Right. Not to create new facts on appeal. So, yes, whatever was before the fact finder. And Lee is pretty clear about that. Yes. The Lee decision. Yes. And Lee was also relying on House v. Bell. And I think all these cases are assuming the general proposition that the development of facts is in the district court and it is improper to develop new facts in the appellate court. The appellate court is reviewing what the district court did. So your position is the only person we can look at really is Rayford. Absolutely. What do we know about Rayford? Well, we don't know much about Rayford. And I would agree with Your Honor that his declaration is a big zero. It is a hearsay declaration without any detail whatsoever. There's no context to the statement. There's no explanation of the delay. We do know that he's also an inmate or at one time was an inmate with Mr. Monk at the same California correctional institution. Isn't that correct? Yes. What we do know are a few facts that show he's not credible, that he was, in fact, in prison. He was with Mr. Monk. He's a convicted felon. And so those are reasons to reject the declaration. And the declaration is inconsistent with many of the facts that already exist in the record. That's right. To the extent he says the games were not rivals. Who took the declaration from him, do we know? What were the circumstances is what I'm getting at. I don't know the circumstances. I mean, did he just pop up one Sunday morning and say, I'd like to make a declaration on something that somebody said to me five years ago? That could very well be. It is very suspect, the declaration. Is there anything in the record that anybody went to Rayford after this declaration and said, hey, what's going on here? No, there isn't. We just have a naked declaration with a hearsay statement. But what if Rayford's right? I mean, it seemed to me that law enforcement might follow that up. Well, the question is whether the district court in this case was proper in finding that the petitioner did not meet the very high hurdle to show actual innocence. That's the standard here. And the Schlepp standard is a very demanding one. You know, Schlepp itself said that in order to meet the actual innocence standard, there has to be compelling exculpatory evidence, scientific evidence, compelling eyewitness identification. A single hearsay declaration without any explanation for the delay in presenting it would never under any circumstances meet that standard. Is it your position that the three items of evidence that Schlepp discusses are exclusive? Or were they just given those as examples? Well, I don't know whether they, I'm sure there are circumstances where perhaps there could be other compelling evidence. Well, sure. It's like the Supreme Court's recent decision on who you're going to execute. They said, well, IQ is not the only thing you can look at. Anything else that weighs on it. And I think Judge Bennett is right about that. That's not exclusive. Other things could weigh on the scale, too. I would agree, but I would also. But these affidavits don't rise to that type of evidence. Exactly. It has to be, there's no question, it has to be credible, reliable evidence. That's what Schlepp was getting at. It goes to the heart of actual innocence. And hasn't the Supreme Court said you have a right to be skeptical of these post-events affidavits that come years later? Absolutely. Schlepp itself said that you can consider the timing of the presentation of this evidence. And that was, I believe, was repeated in the United States Supreme Court Perkins case. Well, could any of these people that, well, obviously, Monica Tucker isn't claiming any responsibility. I mean, could anyone be prosecuted for this crime now? Well, that's a good question. And I don't know whether Mr. Smith can at this point. I haven't looked at the statute of limitations. It's an interesting issue to deal with. But wouldn't it be, if I were the judge sitting there, that would be something that, I mean, I think that's something that you can know if you look at, you know, I don't think anyone can be prosecuted for murder, and I think that's why, because obviously if he had died within the year and they could show connection, then that's exactly what Monk would have been prosecuted for. But that being said, and then if there's no statute for murder, the statute of limitations for murder doesn't exist, someone else could be. But in this case, the statute has to do with attempted murder, and it's been this long now. I suspect that it doesn't matter what anyone says. They can't be prosecuted. So isn't that, if I come in and confess but nothing can happen to me, doesn't that, as opposed to if I come in and confess and something can happen to me, isn't that a different declaration? Absolutely. Sure, it's kind of a declaration against penal interest at that point. Yes. It might be. Yeah, that's another reason to doubt the statute of limitations. But even if we, let's say if we considered all three declarations, do they schlep through? They do not schlep through. You know, the idea of this Mr. Smith being the actual perpetrator, third-party culpability, is nothing new. This is not new evidence, new evidence. The defense at trial tried to show that Mr. Smith was the perpetrator. It was argued during closing argument. But Mr. Smith was actually brought before the victim in this case, Mr. Bell, in court. Mr. Bell looked at him and said, that's not the person who shot me. He said that Petitioner was. He knew Petitioner. He went to camp with him. He was 100 percent certain it was Petitioner. It was not Mr. Smith. But isn't Mr. Larson's point that if the jury had known about this new evidence, they would have reached a different verdict or there was a reasonable likelihood they would have? Well, based on these, again, these declarations, which are very thin, no explanation for the delay, based on hearsay submitted years later to the declarations submitted by individuals with questionable credibility and reliability, the answer to that is no. Well, the jury knew then that Mr. Smith had taken responsibility at one point. That did come out in the trial. That all came out at the trial, that he confessed and that he recanted. And he explained in his interview to the detective that Mr. Monk was his friend, and he didn't want to see him go to jail, and that's why he confessed. And then he explained he wasn't the perpetrator. And then Mr. Bell looked at Mr. Smith in court and said, that's not the person. But the defense didn't have any evidence to corroborate that theory, and arguably this new evidence does. Isn't that a difference? Well, but, again, looking at this new evidence, theoretically, maybe any of this could have possibly made a difference. But, again, we're talking about the demand and show up standard, and it is not sufficient to simply go to the district court and present a hearsay declaration, or even if he had submitted the others, and be able to meet that standard. There has to be more than that. And what's more, I'd also point out in this case that Petitioner basically, in his motion to the court, submitted this declaration for Mr. Rafer, but didn't provide any other argument or facts in support of his actual innocence claim, didn't discuss the facts at trial. All of these issues that Petitioner is now bringing up on appeal about the things that happened at trial, the evidence that was produced, the context of it, that was never argued in the district court. So Monk was pro se. Yes, he was pro se. But, again, he submitted a motion that cited the appropriate law for actual innocence. He was capable of presenting a motion to the court. If he could present all the laws, and he was at trial, he certainly could have discussed the evidence at trial to try and make more of a showing to the district court why this would have mattered, if he even could have done that. What explanation, if any, did he tender about the circumstances under which this Rafer declaration was made? He didn't. He simply said that he was incarcerated with Mr. Rafer some five years later, and that's when he met him and got the declaration. But there were no other circumstances. Were there any witnesses to the declaration? A notary or anything like that? I mean, in exactly what form did this declaration appear? I don't believe there was a notary for the Rafer declaration. The Marshall declaration, I believe, was notarized, but interestingly was not signed into the penalty of perjury. I believe the Rafer declaration, if I recall, was not notarized. It was just signed twice. There were two dates on it, which is also a little suspect why it was signed twice. And there was really no context to this declaration. Essentially, Petitioner just submitted this handwritten hearsay declaration to the court without any discussion of the context of the declaration, the delay. How do we know Rafer wrote it? We don't. We don't. I mean, that's what I'm getting at. I mean, here's the guy who shows up with a piece of paper. We don't even know who wrote it. And the district court said in rejecting the actual innocence claim, this delayed declaration is neither credible nor trustworthy, and I am finding that there's no showing of actual innocence. I'm not even sure on this record that it's a declaration. It's a piece of paper. That's right. That's right. It's very suspect. And under the Schlepp standard, where it's a very demanding standard, a really questionable piece of paper like this certainly cannot meet that standard. And, Mr. Tinoff, it's so demanding that it's not just that they have to show that one juror would have changed their mind, but as Chief Justice Kuczynski pointed out in his concurring opinion and Lee citing Schlepp, you have to know that all 12 jurors would have changed their mind. That's right. That's a very difficult standard, isn't it? It's a very difficult standard, and there's no possible way, given the record in this case, given Mr. Rayford's declaration, which Your Honor characterized as a zero, that that could possibly qualify to meet that demanding Schlepp standard. Unless there are other questions, I will submit to the matter. There don't appear to be other questions. Thank you for your argument. Thank you. Now, the Marshall Declaration is notarized somehow? Yes, it is. Yeah, there's a stamp from a notary from L.A. County. Yeah, and what I'm getting at is the other declaration. I mean, what is it? It's a piece of paper? It's a handwritten affidavit, Your Honor, that's signed and dated twice. And it is notarized, page 48 of the excerpts. Oh, they both are? Yes. So is that the reason there's a second date when it was? Yes, exactly, Your Honor. He signed it in January, notarized two months later. So was that when you became involved, or no? No, no, this was the very first thing in 2008. And I have two points to make, Your Honor, about the state of the record and the evidence. The evidence that we've offered that was not submitted to the district judge may not be part of the record, but it must be considered under the actual innocence question. Under Lee, it says all the evidence, old and new, incriminating and exculpatory, and, Your Honor, admissible at trial or not, must be considered. Well, but it's got to be. So you can show up today and tell me, guess what? You see that guy in the fourth row? He just told me that he was in prison and the same thing happened. That's not evidence. Your Honor, what we're saying is. I mean, could you do that if you're right? You can just tell us today somebody told you yesterday that something. What we're saying, Your Honor, is that this should be remanded to the district judge who never considered all of this post-trial evidence. But isn't that what you're arguing, that you can just come in today and tell us, guess what? I have a new declaration? Respectfully, Your Honor, that's what the law provides when someone says. So that's what you're telling us. Yes, Your Honor. When someone's. . . You can stand there right now and say, here's a new declaration, and we have to consider it. No, Your Honor. I'm saying that the law provides when someone says he's been imprisoned wrongfully and that he's innocent and he's trying to excuse a late filing of his habeas petition, the law requires us to look at all of the evidence he proffered, both good and bad, both admissible and not. The other side says you didn't appeal the decision not to allow the Marshall Declaration in evidence. That's. . . Is that right? No, it's correct that the Notice of Appeal was filed, but it's incorrect that somehow makes the Marshall Affidavit out of bounds. But you did not appeal that decision. Well, again, this is Mr. Monk. . . He worked on the case. Right, of course, meaning you. Right, he had already filed the Notice of Appeal on the issue of actual innocence. And the additional affidavit he filed from Mr. Marshall was additional evidence in support of that claim. The claim had already been appealed, and, in fact, the Notice of Appeal was still pending when he added the Marshall Affidavit. Mr. Larson, are you open to the possibility that you're wrong on the least standard of what admissible at trial or not means? I don't think it means any conceivable evidence, whether it meets the rules of admissibility. It could equally, and it makes more sense that it might mean evidence not admitted at trial that should have been because it was properly admissible. Because the notion that a court can consider evidence that isn't properly admissible is crazy. Well, thank you. I'll use the word. I mean, it throws the whole idea of the evidence code right out the window. Fair enough, Your Honor. I'm not saying that any piece of evidence has to be taken at face value. But what I am saying is that when we have, as here, a person serving life in prison for a shooting to which someone else confessed, and we have three people coming forward after trial corroborating that other person as being the culprit and indicating that the verdict entered against Mr. Monk was unlawful, he merits at least a hearing into this question. As in Madjoy, he's never gotten a hearing. He's asked for one. Your Honors are skeptical of the credibility of two of these witnesses. I don't blame you. There are handwritten submissions from people in prison that a pro se litigant has proffered. I don't question your questions about their credibility. But I think that to avoid a miscarriage of justice, these questions at least have to be examined through adversarial testing. To have the witnesses in front of a judge who can make a credibility determination about whom to believe, that's exactly the case in Madjoy. There were no angels in Madjoy. All the defendants were kind of, had sordid pasts, and arguably that's the case here. But to say that an 18-year-old should die in prison with no federal review of his conviction, where three people have come forward and indicated that he is not guilty, would be a miscarriage of justice, Your Honors. We at least merit an inquiry into whether these witnesses are credible, including the school teacher who works with mentally impaired people and who also corroborates the position of evidence. None of this has been looked at, Your Honors. Well, have you tracked Rayford Dowd or any of these people down since to find out any additional information about them and the circumstances under which these declarations were made? Not Mr. Rayford or Marshall. Clearly, yes, from Ms. Tucker. But not Rayford or Marshall. Correct. We haven't gotten additional information. We've gotten additional information from Ms. Tucker. Do you have investigators? I mean, why hasn't somebody tracked that? If you're telling us somebody's sitting in prison who's innocent, it seems to me you'd have somebody out there tracking these people down. To add beef. We do, and we are doing so, Your Honor. And we've been able to proffer, and our position is that this warrants an inquiry. We're not saying, all right, get out of jail free. Right? But it warrants an inquiry. Should a teenager die in prison for a crime that someone else confessed to? That's the question. Do we close the door on him with no further review and say, that's it, we're done? And our position is, no, we don't. The law requires consideration of all the evidence here and at least an inquiry, into whether this person may, in fact, be not guilty. All right. Unless there are further questions, we've taken you into overtime. Thank you both for your argument in this matter. You both did an excellent job of covering the landscape here. Thank you.
judges: Bennett, TROTT, CALLAHAN